## V. O. KING et ux. *v.* HILARY TALBERT et al.

1. WILL: RULE AS TO EFFECT OF VOID DIRECTION, ETC., ON THOSE OTHERWISE VALID.—The invalidity of any particular trust, limitation, or interest, created by a last will and testament, will not destroy the trusts and limitations, which are otherwise valid, unless the latter are so connected with those that are illegal and void, that it is impossible to sustain the one without giving effect to the other. See *Hawley* v. *James*, 5 Paige Ch. R. 458–59–60; *Kane* v. *Gott*, 24 Wend. 666.

2. SAME: WHEN POWER GIVEN TO EXECUTOR. SURVIVES.—When the testator directs his executors, as such, and ·not *nominatim*, to do a certain act at all events, giving them no discretion in the matter, the power survives; and, on the death of all the executors, it may be exercised by the administrator *de bonis non* with the will annexed. See *Bartlett* v. *Sutherland*, 2 Cushman, 395.

3. SAME: CASE IN JUDGMENT.—The testator by the first clause of his will directed, that his property should be kept together, and that the expenses of his family and of the education of his children should be paid out of his effects. By the third clause he directed, that his farm should be continued, and for this purpose, he directed his executors to sell the farm and land, then owned by him, and purchase another in a more suitable location. By the fourth clause he directed, that the surplus proceeds of his farm should be invested in property, or in such other manner as his executors should deem best for the interest of his family. By the fifth clause he provided that his property should be equally divided among his children upon the marriage of his widow; and by the last clause he appointed R. and H. his executors. The will was not executed so as to pass real estate. After the death of both of the executors, and whilst the widow remained unmarried, one of the testator's children applied for a division of the estate. Held, 1st. That the invalidity of the direction to sell the farm, did not affect the directions to keep the property together and continue the plantation; that the executors, under the power vested in them by the fourth clause, to invest the proceeds of the farm in other property, might purchase another plantation. 2d. That the duties imposed to keep the property together and continue the farm, and to purchase another in a more suitable location, were to be discharged at all events by the executors as such, and not *nominatim*, and upon their death survived to administrator *de bonis non*.

APPEAL from the Court of Probates of Carroll county. Hon. Joseph Drake, judge.

The will of Baker Lipscomb is as follows:—

First. I will that my property be kept together, and the expenses

of my family paid, and that my children be educated out of my effects.

Second. This clause makes provision for the advancement to each of his children, as they arrive at full age or marry, of $3200.

Third. I will that my farm be continued, and for this purpose I will that my executors sell my present farm and land, and purchase one in some more suitable location.

Fourth. That should there be at any time cash on hand, over and above the necessary expenses of my family, that the same be invested in the purchase of property, or in such other way as my said executors may think shall be for the interest of my family.

Fifth. This clause provides for a division of his property, upon the marriage of his widow; and

Sixth. Reeves and Hill are appointed his executors.

The substance of the petition and the proceedings in the court below are set out in the opinion of the court.

*J. Z. George,* for appellants.

1. We insist that the direction in the first clause, to keep the property together, includes all of the testator's property, real and personal. The term itself is of the most extensive signification, and means everything which is the subject of ownership. See 1 Jarman on Wills, 657–662 (marginal). *Jackson* v. *Hansel,* 17 John. R. 281.

The third clause provides, or attempts to provide, the means, and prescribes the manner by and in which, the estate or property shall be kept together, viz.,.by a sale of his present plantation and the investment of the proceeds in the purchase of another; hence the property is to be worked.

It is most manifest then that the testator's intention and meaning is, that his property (real and personal) shall be kept together for the purpose of carrying on his farm or plantation; that the means of keeping it together was the use of the plantation, and the end to be accomplished was the employment of his capital and property in agriculture.

It is to be understood, in construing this provision of the will, that the testator knew the course of practice common in the country,

and the one sanctioned by law, that a decedent's slaves were usually hired out until distribution was made, his other personalty sold, and the land rented by the guardian of minor children. This course he wished to avoid, for obvious reasons, having reference to humanity in the treatment of his slaves, and also to their productive value. This hiring or separation of his slaves was what he wished to avoid, and hence the provision to keep them *together* on the plantation.

It was then a part of his general plan, and essential to its success, that the plantation should be carried on; and the plantation was to be carried on by a sale of the one he then owned, and an investment, by his executors, of the proceeds in another. The will fails in this respect, and it is therefore impossible to execute it.

The rule in such a case seems to be very plain, that the whole plan is to be abandoned. See *Greaves* v. *Case*, 4 Brown Ch. R. 67, 71.

This case was cited and approved by Chief Justice Sharkey, in *Mahorner* v. *Hooe et al.* 9 S. & M. 280.

It is the well-settled doctrine, that where a bequest is made dependent upon, or is inseparably connected with another, which is invalid for illegality, that both will fail; for the manifest reason, that when it is apparent that the intention of the testator is, that one thing shall not be done, unless in connection with and in aid of another, which cannot be done, that then his will is that neither shall be done: the primary object failing, the secondary must fail also. This rule has been very extensively discussed, and applies in cases very similar to the one at bar.

By the English statute, a devise of realty, or any interest therein, to charitable uses, was prohibited, and therefore void. Bequests of personalty to such uses were allowable; but whenever the disposition to charitable uses included both realty and personalty, and the bequest of the latter was made in aid of the former, or they both together constituted parts of a general plan in which the whole was to be administered, it has uniformly been held that both failed. See 1 Jarman on Wills, 205; *Att.-Gen.* v. *Whitchurch*, 3 Ves. Jr. 141, and authorities there cited. And see, also, *Lusk* v. *Lewis*, 32 Miss. R. 297; same case, decided this term, and *Mahorner* v. *Hooe*, 9 S. & M. 280.

Here is a devise of land void; not, it is true, on account of illegality in the use to which it is attempted to be applied, but void for illegality—that is, a failure to comply with the law—in the execution of the will, so far as it relates to it. Here, also, is a disposition of personalty, valid in this respect, but connected with the other, and constituting with it a part of the general plan of the testator. Is there any reason why the rule of construction should not be the same in both cases? We think not.

2. But further. The will requires that the executors shall invest the proceeds of the hires as they shall deem best, and that they shall purchase the farm on which the personal property is to be worked. These duties are personal trusts, requiring the exercise of discretion and judgment of a high order, and it is not to be presumed that the testator was willing that they should be exercised by a stranger, not selected by him. And the exercise of these duties is inseparably connected with the provision to keep the property together; and the executors being dead, for that reason the provision under consideration cannot be carried out.

*Aldridge* and *Gallady*, for appellees.

1. The purposes of the testator are believed to be obviously, that his property should be kept together, for the maintenance of his family and education of his children; and to effect this, that the plantation then owned (owned at the death of the testator) should be sold, and another purchased. The power to do this is given to the executors " *qua* executors, and not *nominatim,*" is not a personal trust, but a devise that the testator's "present farm" be sold at all events, and another purchased, and might be carried out under the provisions of the statute. Hutch. Code, 671, § 113; Rev. Code, 458, Art. 136; 24 Miss. R. 401.

2. But the executors are dead. Equity will interpose and effect the trusts of the will. "However, in cases where the power is extinguished, it is well established that equity will interpose," &c. Williams on Exrs. 626; Story's Eq. Jur. § 1058, *et seq.*

3. But the will is attested by an insufficient number of witnesses, and therefore the "present farm" cannot be sold. The sale of the "present farm" is but a means; the end, to wit, the keeping together the property for certain purposes, can still be effected by

a conversion of personalty into realty; for the purchase of a place is not a *sine qua non* of the sale of the " present farm," and not dependent on such sale. And the heirs, claiming a division of the " present farm," cannot make a merit of defeating the testator's intention; and a court of equity will interpose to provide the means to effect the intent and purposes of the testator, which are legitimate. Story's Eq. Jur. 1063, 1063 a, *et seq.* and notes.

4. Nor, from anything appearing in the record, does it appear that the purposes of the testator cannot be subserved without the purchase of another place, as the main object of the testator was to keep his property together, for certain purposes named in the will.

HARRIS, J., delivered the opinion of the court.

The appellants filed their petition in the Court of Probates for Carroll county, against the appellees (Adams, and heirs of Baker Lipscomb, deceased), praying distribution of the estate of said decedent, on the following grounds.

In 1852, the decedent and father of appellant, Mrs. King, died, leaving a will, which was duly probated and recorded, but only effectual as a bequest of his personal estate, for want of due attestation to devise real estate.

By the first clause of said will, the testator directed his property to be kept together, and the expenses of his family should be paid, and his children educated out of his effects.

By the second clause it was provided, that when any child arrived at age or married, he or she should receive $3200.

By the third clause he directed his farm to be continued, and for this purpose he directed his executors to sell his farm and land, and purchase one in some more suitable location.

By the fourth clause, he directs that the surplus proceeds of his farm be invested in property, or in such other manner as his executors should deem best for the interest of his family.

By the fifth clause, it is provided that if his widow should marry, that then his property should be equally divided among his children.

By the sixth clause, he appointed Reeves and Hill his executors.

King et ux. *v.* Talbert et al.

These executors qualified under the will, and have kept the property together on testator's farm ever since; that both of the executors are now dead, and Hilary Talbert and Monroe Johnson have been appointed administrators *de bonis non,* with the will annexed, on said estate, and that they are still carrying on said farm. The debts of the estate have all been paid, and there is a large surplus of money on hand.

Upon this state of facts appellants claim, by their petition, that they are entitled to distribution of said estate; that the administrators have no right to the possession of the realty under the will, and that it is therefore impossible to carry out the intention of the testator, expressed in the third item; that the direction in the first clause, that the property should be kept together, was made on the condition that the provisions of the third clause, directing the sale of the farm and the purchase of another, could be legally carried out; and that condition failing, the said direction is void; that the direction to carry on the farm was a personal trust in the executors nominated in the will, and since they are both dead, it must fail for want of a trustee having the personal confidence reposed in those appointed by the testator himself.

To this petition there was a demurrer in the court below, which was sustained and the petition dismissed, and this appeal taken here.

That it was obviously the intention of the testator that his property should be kept together on his farm, mentioned in the will, by his executors, until such time as they could sell it and purchase another in a more suitable location, we cannot doubt. That the realty did not pass, by this will, for the want of proper attestation, but descended directly to his heirs at law, subject to the widow's claim, is equally evident. But it by no means follows, that because the trust in relation to the land is invalid, that therefore the whole must fail.

The rule on that subject is accurately stated by Chancellor Walworth, in *Hawley* v. *James et al.* 5 Paige Ch. R. 318, 458, 460. That the invalidity of any particular trust, interest, accumulation, or limitation, created by will, will not destroy the trust and limitations which are otherwise valid, unless the latter are so mixed up with those that are illegal and void, that it is impossible to sustain the

one without giving effect to the other. See also *Kane* v. *Gott*, 24 Wend. 641, 666. The cases cited by counsel for appellants, when carefully considered, sustain this rule. " The general principle (says Judge Sharkey, in *Mahorner* v. *Hooe*, 9 S. & M. 280) is, as stated, that an illegal bequest or devise defeats all *dependent* bequests, *subsidiary to and inseparable* from it, which would otherwise be valid ; citing 1 Jarman on Wills, 205 ; Roper on Legacies, 115, 135 ; and *Greaves* v. *Case*, 4 Brown Ch. R. 67. This results, he adds, from the fact, that oftentimes, as the *primary* disposition fails, that which is *secondary* or dependent cannot be ascertained." Here no such difficulty exists ; the primary object of the testator was to keep his property together on a farm, in a more suitable location to be purchased by his executors. As a means to accomplish this end, he intended to devise a power to his executors to sell his real estate and farm, on which his property was situated, at his death. This power is void for want of due execution. But it fully appears that the remaining valid trusts are in no manner necessarily connected with, dependent upon, or inseparable from the old farm or the testator's real estate. There is nothing to prevent the full and complete execution of the trust by his representatives, in accordance with his primary and main object, by the purchase of the tract of land directed, in some suitable location, and placing his property on that tract. That the representatives have ample means to do it seems to be evident from the statement in the record, and the general power at their discretion to invest the proceeds in property, or such other manner as they may deem best, leaves no doubt that it is certainly possible, easy, and natural, to sustain and give effect to the intentions and wishes of the testator, without giving any effect to his will as a devise of real estate ; nor in any manner will such determination affect the general intentions of the testator, or the interests of his heirs and distributees. It is said, however, that the carrying on of the plantation was a personal trust in the executors, and upon their death could not be exercised by the administrators *de bonis non.*

It is manifest from the first clause of this will that the testator desired and intended, *at all events*, without reference to the agent by whom this desire should be accomplished, that his property should be kept together, and the expenses of his family paid, and

his children educated, out of his effects.   He reposes no confidence, specially in relation thereto, in his executors, and leaves them no discretion.

And so in relation to the purchase of another farm, in " some more suitable location;" while he directs " his executors," as such, generally, to make the purchase, for the accomplishment of this specified object, he leaves them no discretion as to the exercise of the duty enjoined.

In such case the rule is, that the power survives.   The will evinces a design in the testator, that his direction is to be carried out, *at all events,* and not at the discretion of his executors or representatives.   No special trust or confidence being reposed by the testator in these executors "nominatim," their death cannot defeat the lawful intention and will of the decedent.   *Swett* v. *Penrice et al.* 24 Miss. 416; *Lusk* v. *Lewis,* decided at October term, 1858.   Not reported.

Appellants are therefore not entitled to immediate distribution of the whole estate, as sought by their petition; and the demurrer to the petition was properly sustained, and petition dismissed.

Decree affirmed.